# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAUNYA PERRY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 15-CV-0095-CVE-FHM |
| | ) |
| JEREMY FLOYD, in his Official | ) |
| Capacity as Sheriff of Ottawa County, | ) |
| TERRY DURBOROW, in his | ) |
| Individual Capacity, and | ) |
| DANIEL CLEMENTS, | ) |
| | ) |
|     Defendants. | ) |

## OPINION AND ORDER

Now before the Court are Defendants Derwin [Floyd][1] and Durborow's Motion and Brief for Summary Judgment against Plaintiff Taunya Perry (Dkt. # 73), and the Motion for Partial Summary Judgment Submitted by Defendant Daniel Clements and Supporting Brief (Dkt. # 94). Defendants Jeremy Floyd and Terry Durborow argue that plaintiff has no evidence to support a claim that the Sheriff of Ottawa County adopted a custom or policy that caused a violation of her constitutional rights, and Durborow argues that he is entitled to qualified immunity as to plaintiff's claim against him in his individual capacity. Defendant Daniel Clements argues that plaintiff's claims are barred by the statute of limitations to extent that the claims arose before February 25, 2013, and that the actions that occurred before that date did not rise to the level of a constitutional violation.

---

[1]     Derek Derwin, who succeeded Durborow as Sheriff of Ottawa County, is no longer Sheriff and, pursuant to Fed. R. Civ. P. 25(c), Jeremy Floyd has been substituted as the proper defendant for plaintiff's official capacity claim against the Sheriff.

**I.**

Durborow was the Sheriff of Ottawa County from May 2006 to December 2015, and the jail administrator during much of Durborow's tenure in office was Randall Lloyd. Dkt. # 73-1, at 3-6. Lloyd was responsible for hiring detention officers for the Ottawa County Jail, and he hired male detention officers only due to the predominantly male prisoner population. Dkt. # 73-2, at 5. New detention officers were required to review a policy and procedure manual and the jail standards, and they were provided a copy of the Oklahoma rape statute. Id. at 6. Each new detention officer was required to sign an oath of office and a form acknowledging that he had been advised of the Oklahoma rape statute. Id. Under Oklahoma Department of Health Jail Standards, male detention officers should enter the female pod of the jail only in an emergency, and they should contact the tower before entering the pod. Dkt. # 73-1, at 36.

Clements was hired as a detention officer in March 2012, and he spent two or three days reviewing jail rules and procedures with Lloyd. Dkt. # 73-3, at 3-4. Clements does not recall that he participated in any on-the-job training, but he did shadow a more experienced detention officer for the first few days. Id. at 6-7. Clements signed a form acknowledging that any sexual contact with a female inmate was prohibited under Oklahoma law. Id. at 26; Dkt. # 73-5. Clements received additional training on the Oklahoma jail standards in October 2012. Id. at 27. Clements was trained that there was a line on the floor of the female pod that male detention officers were not permitted to cross without a second male detention officer present. Dkt. # 73-3, at 9-11.

Taunya Perry was arrested and booked into the Ottawa County Jail on December 28, 2012. In February 2013, she was "messing around" and dancing with another inmate, Samantha Smith, and Smith started to kiss Perry. Dkt. # 73-8, at 9. Perry heard a voice over the intercom asking Perry

2

and Smith to open the door to allow the detention officers to watch them, and the detention officers on duty were Clements and Jason Wammack. Id. at 9-10. Perry states that she enjoyed the "male attention" she received from Clements and Wammack. Id. at 11. Perry claims that she and Smith agreed to meet Clements one night to "fool around," and the other inmates agreed to stay out of the way during the encounter. Id. at 13-14. Clements allegedly unzipped his pants and directed Smith to perform oral sex on him, and Perry claims that she was kissing Clements at the same time. Id. at 15. Perry became upset and ran out of the room, and Smith emerged from the room about three minutes later with two cigarettes that Clements had given her. Id. at 17. Perry did not make a complaint against Clements, and she is not aware that any other inmate told a jail employee or administrator about the incident. Id. at 20-22. Perry believes that Clements engaged in sexual acts with other female inmates in January and February 2013. Id. at 23-24.

On February 20, 2013, Perry was put in lockdown, or solitary confinement, after an altercation with another inmate. Dkt. # 104-7, at 19-21. She was still in lockdown as of February 25, 2013, and Clements used the intercom to ask Perry if she wanted to clean her cell. Id. at 28. Clements came to the lockdown cell with a broom and a mop while a Hispanic man waited downstairs, and Perry was concerned that the Hispanic man was acting as a lookout. Id. at 30. Perry asked for toilet cleaner, and she claims that Clements agreed to get toilet cleaner but he told her that she should pull her pants down before he came back. Id. Clements came back with the toilet cleaner and he asked Perry why she had not pulled down her pants. Id. at 31. Perry claims that Clements

3

pulled her pants down and raped her, and he left two cigarettes when he left her cell.[2]  Id. at 32.  Two former inmates, Toni Morgan and Amanda King, claim that Perry voluntarily had sex with Clements, because Perry had heard of a settlement in a case arising out of Delaware County, Oklahoma, and Perry believed that she could file a lawsuit against the jail if Clements had sex with her.  Dkt. # 73-9, at 6-7; Dkt. # 73-10, at 3-4.

Perry was released from jail on February 28, 2013.  Dkt. # 73-8, at 38-39.  Perry admits that she did not tell anyone at the jail about the alleged rape by Clements, and she did not file a grievance or a police report about the incident.  Id. at 40.  Perry claims that she intended to contact law enforcement after she was released from prison, but there is no evidence that she sought a criminal investigation of Clements after she was released.[3]  Dkt. # 104-7, at 34-37.  On March 21, 2013, Travis McMinn, a detention officer, filed a report that he had received a complaint that Wammack and Clements were engaging in sexual activity with female inmates. Dkt. # 73-14, at 3-4.  A female inmate, Cynthia Evans, told McMinn that Wammack and Clements "were going into the female pod at 2:00 a.m. and trading cigarettes for blow jobs."  Id. at 4.  Lloyd immediately suspended Wammack and Clements, and Durborow directed Lloyd to contact the district attorney.  Dkt. # 73-2, at 10.  Durborow contacted the Oklahoma State Bureau of Investigation (OSBI), and he requested

---

[2]  This version of events is taken from plaintiff's deposition testimony.  However, Clements denies that he engaged in any sexual activity with Perry.  The Court is simply summarizing the evidence offered by the parties, and the Court is not making a finding that Perry's or Clements' assertions as to what occurred on February 25, 2013 is true.

[3]  Perry states that her stepmother called someone at the Federal Bureau of Investigation following her release from prison, but Perry does not identify who was called or what type of complaint was made.  Dkt. # 104-7, at 36-37.  There is no evidence in the record that any type of formal criminal complaint was ever filed with a law enforcement agency and, assuming that Perry's stepmother called the FBI, there is no evidence that the matter was actually investigated.

that OSBI investigate Evans' allegations. Dkt. # 73-1, at 27. OSBI interviewed Clements about the allegations of sexual misconduct, and Clements denied that he engaged in any sexual activity with a female inmate. Dkt. # 73-3, at 18. Durborow told Clements that he could not return to work until OSBI's investigation was complete, and Clements submitted a letter of resignation. Dkt. # 104-1, at 16-17. No criminal charges have been filed against Clements as a result of the investigation.

Durborow states that, prior to March 21, 2013, he had received only one allegation of sexual misconduct by a jail employee during his tenure as Sheriff. Dkt. # 73-15, at 2. In October 2008, a female inmate alleged that she had been sexually assaulted, and Durborow asked OSBI to investigate the matter. Id. OSBI investigated the complaint and interviewed approximately 20 witnesses, and OSBI found that no sexual assault had occurred based on the female inmate's admission that she had a psychotic episode. Id. In 2012, the Ottawa County District Attorney asked OSBI to investigate a possible sexual assault of a female inmate at the Ottawa County Jail. Dkt. # 74-1. The report concluded that a female inmate alleged that Lloyd used excessive force, but there was no sexual assault nor did Lloyd threaten to sexually assault a female inmate. Id. Durborow states that he was not aware of this investigation and he did not see the report until a few days before his deposition in this case. Dkt. # 73-1, at 15; Dkt. # 73-1, at 30-33.

Female inmates were monitored by video camera and by a dispatcher located in a centrally-placed observation tower. Dkt. # 73-2, at 7-8. The video cameras do not show the individual cells and showers for privacy reasons, and there is also a mechanical room that does not have video surveillance. Dkt. # 73-1, at 14. In March 2013, Durborow was made aware that the video cameras

in the female pod were displaying video but the video was not being recorded, and they could not recover any video recordings from January or February 2013.[4] Id. at 18-20.

On February 25, 2015, Perry filed this case alleging that she was sexually assaulted by Clements, and that Durborow was deliberately indifferent to the health and safety of female inmates at the Ottawa County Jail.[5] Perry alleged claims under 42 U.S.C. § 1983 against Durborow in official and individual capacities, as well as a § 1983 claim against Clements, for alleged violations of Perry's rights under the Eighth and Fourteenth Amendments to the United States Constitution. Floyd has been substituted as the appropriate party for Perry's official capacity claim against the Sheriff of Ottawa County. Floyd and Durborow have filed a motion for summary judgment arguing that plaintiff has no evidence that a constitutional violation was caused by an official policy or custom. Dkt. # 73. Clements has filed a motion for partial summary judgment asserting that the statute of limitations bars Perry from relying on events before February 25, 2013 as a basis for liability against Clements. Dkt. # 94. The Court has stayed the proceedings pending a ruling on the motions for summary judgment. Dkt. # 100.

As to Clements' motion, Perry responds that she is not seeking to hold Clements liable for acts occurring before February 25, 2013, but that evidence of events that occurred before February

---

[4]    Plaintiff argues that the video cameras were "inoperable" and that the video cameras were down for as long as three weeks. Dkt. # 104, at 17. Lloyd's testimony about problems with the video recordings is somewhat equivocal, but Durborow clearly explained the problem in his deposition that the cameras were functioning but not recording video. The Court does not find that there is a factual dispute as to the condition of video surveillance system, and Durborow specifically explained that the video cameras functioned but video recordings were not being stored on a hard drive. Dkt. # 73-1, at 18-20.

[5]    The amended complaint (Dkt. # 3) also named Jennifer Miller as a plaintiff, and Miller alleged that she had been sexually assaulted by Clements. Miller voluntarily dismissed her claims and she is no longer a party. Dkt. # 77.

6

25, 2013 is relevant to establish a background for Perry's claims. In light of Perry's response, the Court finds that Clements' motion for partial summary judgment (Dkt. # 94) is moot.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review,

the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Floyd argues that plaintiff cannot establish that an official policy or custom caused her alleged injury, and he asks the Court to entered summary judgment in his favor on plaintiff's official capacity claim under § 1983.[6] Dkt. # 73, at 18-25. Durborow argues that he cannot be held liable under a theory of supervisory liability, because there was no official policy that caused plaintiff's alleged injury. Id. at 29. He also claims that he is entitled to qualified immunity, because plaintiff cannot establish that she suffered a violation of her constitutional rights. Id. at 31.

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007) The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply

---

[6] Floyd also argues that plaintiff cannot prevail under a failure to train theory. Dkt. # 73, at 26-28. Plaintiff does not respond to this argument and it appears that she has abandoned any argument that Floyd is liable under a failure to train theory. See Dkt. # 104 (plaintiff's response to Floyd's and Durborow's motion for summary judgment).

a defense to a plaintiff's claims. Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006). The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. A plaintiff must allege that the defendant's actions violated a specific constitutional right and, if the plaintiff has alleged a constitutional violation, the plaintiff must show that the constitutional right was clearly established when the conduct occurred. Toevs. v. Reid, 685 F.3d 903, 909 (10th Cir. 2012). A court has the discretion to consider the steps in whatever order is appropriate under the circumstances. Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223 (2009)). Plaintiff bears the burden to prove that her constitutional rights were violated and that the law giving rise to her claims was clearly established at the time the acts occurred. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

When the events giving rise to this case occurred, plaintiff was a pretrial detainee who was in the custody of the Ottawa County Sheriff and, under the Fourteenth Amendment, a pretrial detainee must be treated with "at least the same standard of care prison officials owe convicted inmates." Blackmon v. Sutton, 734 F.3d 1237, 1244 (10th Cir. 2013). The Eighth Amendment standards for treatment of prisoners are applicable to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. Martinez, 563 F.3d at 1088. "Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998). However, not every injury or harm suffered by an inmate gives rise to liability against prison officials, and an aggrieved inmate must show that prison officials acted with deliberate indifference to his or her needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Under Farmer v. Brennan, 511 U.S. 825 (1994),

a deliberate indifference claim has two components: (1) "the deprivation alleged must be, objectively, 'sufficiently serious;'" and (2) a prison official must have acted with a "sufficiently culpable state of mine," which in cases concerning inmate health or safety is "deliberate indifference." Id. at 834.

The law is clearly established that the rape or sexual assault of an inmate by a detention officer can constitute a violation of the Eighth Amendment. Castillo v. Day, 790 F.3d 1013, 1018-19 (10th Cir. 2015). The Tenth Circuit has stated that "[s]exual abuse is repugnant to contemporary standards of decency and allegations of sexual abuse can satisfy the objective component of an Eighth Amendment excessive force claim." Smith v. Cochran, 339 F.3d 1205, 1212 (10th Cir. 2003). To establish the subjective prong of a deliberate indifference claim, a court must consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Sexual assault of an inmate can also satisfy the subjective prong of a deliberate indifference claim. Giron v. Corrections Corp. of America, 191 F.3d 1281, 1289 (10th Cir. 1999). There is caselaw supporting the proposition that an inmate cannot legally consent to have sex with a prison guard due to the disparity in power between inmate and guard. See Lobozzo v. Colorado Dep't of Corrections, 429 F. App'x 707, 711 (10th Cir. 2011);[7] Doe v. Schneider, 2013 WL 5429229, *6 (E.D. Pa. Sep. 30, 2013); Carrigan v. Davis, 70 F. Supp. 2d 448, 453 (D. Del. 1999). However, the Tenth Circuit has rejected the argument that a detention officer automatically commits an Eighth Amendment

---

[7]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

violation by having sex with a female inmate if there is sufficient evidence that the inmate consented. Graham v. Sheriff of Logan County, 741 F.3d 1118, 1126 (10th Cir. 2013).

Plaintiff has alleged a claim against the Sheriff of Ottawa County in his official capacity, and this is treated as a claim against the governmental entity rather than the Sheriff as an individual. Kentucky v. Graham, 473 U.S. 159 (1985). Jeremy Floyd is currently the Sheriff of Ottawa County and he is the appropriate defendant for plaintiff's official capacity claim under § 1983. Plaintiff has also alleged a claim against Durborow in his individual capacity, because he was the Sheriff at the time the alleged constitutional violation occurred. Unlike plaintiff's official capacity claim, Durborow has been sued as an individual and he can assert a defense of qualified immunity to plaintiff's § 1983 claim.

The Court will initially consider plaintiff's official capacity claim against Floyd. Under § 1983, a local government or municipality may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments can not be sued under a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). "[T]o establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006). It is not enough for a plaintiff to allege that the actions of a governmental employee injured her. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002). "Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Seamons v. Snow, 206 F.2d 1021, 1029 (10th Cir. 2000).

Plaintiff argues that there was an informal policy or custom of inadequate supervision over female inmates, and she claims that Durborow was aware of numerous incidents in which female inmates had been sexually assaulted. Dkt. # 104, at 22-23. The Court will initially consider plaintiff's claim that there was a history of female inmates being sexually assaulted at the Ottawa County Jail and that Durborow was aware of these incidents. In 2004, a detention officer, Jeffrey Wayne Thomure, II, was convicted of two counts of rape and two counts of oral sodomy, and the convictions arose out of sexual contact with female inmates at the Ottawa County Jail. See Dkt. # 104-18. However, Durborow was not Sheriff at the time and he was not responsible for enacting or enforcing any official policy at the jail when Thomure sexually assaulted female inmates. These events also occurred nine years before the sexual assault alleged by plaintiff, and evidence of Thomure's conduct does not tend to show that there was a policy in place in 2013 that allowed or encouraged the sexual assault of female inmates. Plaintiff has provided the affidavit of Summer Crowder, a former dispatcher at the Ottawa County Jail, who stated that male detention officers regularly entered the female pod and that she could not see what was occurring due to blind spots on the video surveillance system. Dkt. # 104-9, at 2. She stated that a male supervisor was disciplined for having sex with a female inmate, but that the Sheriff took no steps to protect female inmates from sexual assault by male detention officers. Id. at 3. She further stated that female inmates did not receive proper medical care, and she stated that she resigned when her complaints about the treatment of female inmates were ignored. Id. at 4. The Court finds that the conduct alleged by Crowder occurred almost seven years before the alleged sexual assault committed by Clements, and she does not state that the Sheriff was actually aware of the conduct alleged in her affidavit. Defendants point out that Crowder worked as a dispatcher for about six weeks, and

Crowder did not believe at the time of her employment that it was improper for male detention officers to enter the female pod. Dkt. # 121-1, at 6, 28. Crowder did not observe any inappropriate behavior between female inmates and male detention officers, and she believed that male detention were entering the female pod to play cards with female inmates. Id. at 17-21. Crowder heard rumors that a male detention officer was fired for having sex with a female inmate, but she has no personal knowledge of any sexual contact between a male detention officer and a female inmate. Id. at 31. The Court finds that Crowder's affidavit is not relevant due to the lack of temporal proximity between her brief employment at the Ottawa County Jail and the events alleged by plaintiff. In addition, the statements contained in Crowder's affidavit are largely inconsistent with her deposition testimony, and the Court does not find that the affidavit fairly represents the actual misconduct that Crowder claims to have observed during her time as a dispatcher.

Plaintiff argues that there was inadequate supervision of the female inmates at the Ottawa County Jail and, due to this inadequate supervision, male detention officers were able to enter the female pod without surveillance and sexually assault female inmates. Dkt. # 104, at 23-26. The Court has reviewed the summary judgment record and finds that there is evidence giving rise to a genuine dispute of material fact as to whether a custom or policy of the Ottawa County Sheriff contributed to the alleged sexual assault of plaintiff. Lloyd, the jail administrator, acknowledged that he hires only male detention officers and he hires female dispatchers. Dkt. # 104-4, at 5-6. Female inmates report that male detention officers frequently entered the female pod, and there is evidence that the male detention officers remained in the female pod for a substantial period of time. This would give rise to an opportunity for male detention officers to engage in sexual activity with female inmates. The evidence is clear that male detention officers were trained not to have any

13

sexual contact with female inmates, and Clements testified that male detention officers were not supposed to enter the female pod except in an emergency. However, without any female detention officers, it is reasonable to assume that male detention officers would enter the female pod. There is also evidence that there were blind spots in the video surveillance system and that the blind spots were known to inmates and detention officers. For the purpose of ruling on defendants' motion for summary judgment, the Court must view the evidence in a light most favorable to plaintiff, and evidence of an official policy to hire male detention officers only and to allow blind spots in the video surveillance system could allow a reasonable jury to find that defendants' official policy caused a violation of plaintiff's constitutional rights.

The Court's finding of a genuine dispute of material fact as to the existence of an official policy that caused a violation of plaintiff's constitutional rights also requires the Court to deny Durborow's request for summary judgment as to plaintiff's claim against him in his individual capacity. Under § 1983, a supervisor is not strictly liable for torts committed by a subordinate employee, and the supervisor can be held liable only if he personally participates in the alleged violation of the plaintiff's constitutional rights. Bryson v. Gonzales, 534 F.3d 1282, 1289 (10th Cir. 2008). To establish a claim of supervisory liability under § 1983, a plaintiff must prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010). Durborow was the Sheriff of Ottawa County when the alleged sexual assault of plaintiff occurred, and plaintiff has provided enough evidence giving rise to a genuine dispute as to the existence of an official policy that caused her injury. In particular, the jail

had a policy of hiring only male detention officers, and there has been evidence presented that, contrary to Oklahoma Department of Health Jail Standards, no female employee was available to enter the female pod of the jail to supervise female inmates in a non-emergency.  There is also evidence supporting a finding that there was a lack of supervision over male detention officers, and that male detention officers were freely entering the female pod.  This gave rise to an increased risk of sexual assault of female inmates, even if Durborow was not aware of any prior incident of sexual assault against a female inmate, and a reasonable jury could find that Durborow was deliberately indifferent to the health and safety of female inmates.

For the same reasons, the Court also finds that Durborow is not entitled to qualified immunity from plaintiff's § 1983 claim.  To defeat a request for qualified immunity at the summary judgment stage, a plaintiff must show that the defendant's actions violated a specific constitutional right and, if the plaintiff has established a constitutional violation, the plaintiff must show that the constitutional right was clearly established when the conduct occurred.  Cox v. Glanz, 800 F.3d 1231,1245 (10th Cir. 2015).  Plaintiff has submitted evidence giving rise to a genuine dispute that there was an official policy that caused a violation of her constitutional rights, and the right of a female inmate to be protected from sexual assault is a clearly established right.  See Keith v. Koerner, 843 F.3d 833, 849-50 (10th Cir. 2016) ("it is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment").

**IT IS THEREFORE ORDERED** that Defendants Derwin [Floyd] and Durborow's Motion and Brief for Summary Judgment against Plaintiff Taunya Perry (Dkt. # 73) is **denied**, and the Motion for Partial Summary Judgment Submitted by Defendant Daniel Clements and Supporting Brief (Dkt. # 94) is **moot**.

**IT IS FURTHER ORDERED** that the stay entered on August 22, 2016 (Dkt. # 100) is **lifted**. An amended scheduling order setting the matter for jury trial in July 2017 will be entered forthwith.

**IT IS FURTHER ORDERED** that responses to the motions in limine (Dkt. ## 78, 81) and the objection to magistrate judge's order (Dkt. # 102) are due no later than **March 3, 2017**. Replies in support of the motions in limine are due no later than **March 10, 2017**.

**IT IS FURTHER ORDERED** that plaintiff's response to Defendants Durborow and Clements's Opposed Motion and Brief for Leave [to] Submit Motion in Limine Regarding Summer Crowder's Anticipated Testimony (Dkt. # 108) is due no later than **March 3, 2017**, and defendants' reply is due no later than **March 10, 2017**.

**DATED** this 23rd day of February, 2017.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE